FRANK J. LAUDANO, ADMINISTRATOR (ESTATE OF
ANTHONY H. LAUDANO) ET AL. *v.* CITY OF
NEW HAVEN ET AL.
(AC 18498)

Lavery, C. J., and Hennessy and Pellegrino, Js.

Argued May 5—officially released July 18, 2000

*Martin S. Echter*, for the appellants (defendants).

*David K. Jaffe*, with whom was *Joel M. Ellis*, for the
appellee (substitute plaintiff).

LAVERY, C. J. The defendants[1] appeal from the judgment of the trial court awarding the substitute plaintiff, Ann Marie Laudano, administratrix of the estate of Anthony H. Laudano,[2] attorney's fees and costs pursuant to 42 U.S.C. § 1988. On appeal, the defendants claim that the court improperly (1) determined the hourly rate of attorney's fees, (2) awarded fees for the services of several attorneys and (3) determined the number of hours of legal service to be compensated. We affirm the judgment of the trial court.

The following facts provide the context of the appeal. On the night of June 17, 1991, the plaintiff's decedent, Anthony H. Laudano, was driving his motor vehicle on a street in the city of New Haven when he was shot and mortally wounded by Officer Giro Esposito of the New Haven police department, who was on foot patrol.[3] At the time, Esposito was accompanied by Officer Thomas Herbert of the New Haven police department. In March, 1992, Frank J. Laudano, the decedent's brother, commenced this action against Esposito, Herbert, New Haven Chief of Police Nicholas Pastore and the city of New Haven. He alleged claims for violations of his decedent's constitutional rights arising from police brutality. In the original complaint, Frank Laudano alleged twenty-one counts against the four defendants in both his representative and individual

---

[1] The defendants at trial were the city of New Haven, Giro Esposito, Thomas Herbert and Nicholas Pastore. The jury returned a verdict in favor of Herbert and in favor of the substitute plaintiff as to the other three defendants. In this opinion, we refer to the city, Esposito and Pastore as the defendants.

[2] Frank Laudano commenced this action in 1992, alleging claims in both his administrative and individual capacities. In 1997, Ann Marie Laudano was substituted as the plaintiff in her administrative capacity, at which time Frank Laudano withdrew his individual claims.

[3] The defendants claimed that the substitute plaintiff's decedent attempted to strike Esposito with his vehicle.

capacities.[4] Thereafter, Ann Marie Laudano was substituted as plaintiff, and the individual claims were dropped.

Trial took place in the fall of 1997, with jury selection beginning on October 30 and the verdict being returned on December 23. Jury selection took eight days, evidence was presented over sixteen days and the jury deliberated for two days.[5] Only four counts of the original complaint, which alleged violations of 42 U.S.C. § 1983, one against each of the defendants, were submitted to the jury. The jury found in favor of Herbert and in favor of the substitute plaintiff against the other defendants. The jury awarded the estate of the substitute plaintiff's decedent compensatory damages of $250,000, but no punitive damages. In February, 1998, the substitute plaintiff applied for attorney's fees[6] and costs pursuant to 42 U.S.C. § 1988.[7] The defendants vigorously opposed the application,[8] and a hearing on the substitute plaintiff's application was held before the court on May 11, 1998. The parties offered no testimonial evidence but submitted numerous affidavits in support of their briefs and arguments. The court awarded the substitute plaintiff attorney's fees in the amount of $297,645 and costs in the amount of $13,642.40. The defendants appealed.

The purpose of § 1988 is to make sure that competent counsel is available to civil rights plaintiffs. *Blanchard*

---

[4] Shortly after the action was commenced, the plaintiff obtained different counsel, whose fees are at issue here.

[5] Due to the court's additional responsibilities, trial was conducted only three or four days per week.

[6] The substitute plaintiff sought attorney's fees of $348,972.50.

[7] Title 42 of the United States Code, § 1988 (b) provides in relevant part: "In any action or proceeding to enforce a provision of [section] . . . 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."

[8] The defendants attacked the reasonableness of the fees and took the position that the substitute plaintiff was entitled to attorney's fees of $59,512.50.

v. *Bergeron*, 489 U.S. 87, 93, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989). The amount of attorney's fees awarded is left to the discretion of the trial court. *Weyel* v. *Catania*, 52 Conn. App. 292, 302, 728 A.2d 512, cert. denied, 248 Conn. 922, 733 A.2d 846 (1999). " 'No one can state the reasonable value of legal services as a fact. He can only express his opinion. The value is based upon many considerations.' *Hoenig* v. *Lubetkin*, 137 Conn. 516, 524, 79 A.2d 278 (1951). With respect to awards pursuant to § 1988, those considerations include the rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.' *Blum* v. *Stenson*, 465 U.S. 886, 895–96 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). 'A court has few duties of a more delicate nature than that of fixing counsel fees. The degree of delicacy increases when the matter becomes one of review on appeal. The principle of law, which is easy to state but difficult at times to apply, is that only in case of a clear abuse of discretion by the trier may we interfere. *Hayward* v. *Plant*, 98 Conn. 374, 382, 119 A. 341 [1923]; *Golstein* v. *Handley*, 390 Ill. 118, 125, 60 N.E.2d 851 [1945]. The trier is always in a more advantageous position to evaluate the services of counsel than are we.' *Hoenig* v. *Lubetkin*, supra, 525." *Weyel* v. *Catania*, supra, 302–303.

On appeal, the defendants claim that the court improperly determined the hourly rate of attorney's fees, awarded fees for the services of several attorneys and determined the number of hours of legal services. The federal courts have addressed the proper method by which a trial court should award a prevailing party attorney's fees in a civil rights action. "[T]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. *Blum* v. *Stenson*, [supra, 465 U.S. 888]. The courts may then adjust this lodestar calculation by other fac-

tors. . . . The *Johnson*[9] factors may be relevant in adjusting the lodestar amount, but no one factor is a substitute for multiplying reasonable billing rates by a reasonable estimation of the number of hours expended on the litigation." *Blanchard* v. *Bergeron*, supra, 489 U.S. 94; see also *Hensley* v. *Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

The court's memorandum of decision is comprehensive. It provides the factual and procedural background under which the case was tried and addresses the complexity of the issues. It reflects the court's accurate understanding of the law regarding the award of attorney's fees pursuant to § 1988. The court held a hearing on the substitute plaintiff's application and received the billing records of the substitute plaintiff's counsel and affidavits of attorneys who try civil rights cases in this jurisdiction stating the fees that they charge. The court assessed the time records of each of the attorneys involved in the case and commented on the reasonableness of the fees charged for attorneys of varying experience who worked on the case. In reaching its conclusion, the court adhered to the lodestar method and made adjustments that are consistent with the *Johnson* factors. Furthermore, we are not aware of any law prohibiting a court from awarding fees for services performed by multiple attorneys who work together to prosecute a civil rights action, and the defendants have

[9] See *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The *Johnson* court set forth twelve factors for determining the reasonableness of an attorney's fee award, and they are: the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases. Id., 717–19.

not provided any. On this record, we conclude that the court did not abuse its discretion in awarding the substitute plaintiff attorney's fees in the amount of $297,645.

The judgment is affirmed.

In this opinion the other judges concurred.