GUSTAV JENNE *et al.* Defendants in Error, *vs.* ANNA
JENNE *et al.* Plaintiffs in Error.

*Opinion filed February 16, 1916.*

1. WORDS AND PHRASES—*words "share and share alike" con-strued.* The words "share and share alike" are not used to indicate the amount that is intended to be given, but only to denote an equal division among members of a class or a number of beneficiaries, legatees or devisees.

2. WILLS—*provision construed as giving each of the testator's sisters $3000.* In the absence of anything in the will or surrounding circumstances showing the contrary, a provision in a will that the executors "shall pay in good and lawful money of the United States three thousand dollars ($3000,) share and share alike, to each of my three (3) half sisters, * * * within one year after my death. If in the event of the death of one or all of said half sisters, the above amount shall be evenly divided among their legal heirs as the laws of their country may direct," will be construed as giving the sum of $3000 to each half sister.

3. SAME—*when the bequest does not lapse because the legatee is dead.* Where the testator, after directing his executors to pay $3000 to each of his half sisters, provides that in the event of the death of one or all of them the amount shall be evenly divided among their legal heirs, the bequests do not lapse by reason of the death of the specific legatee either before or after the will was made, but in such case the amount she would have taken passes, as directed, to her legal heirs.

4. SAME—*when specific bequests are not a charge upon real estate.* Where the testator by one clause of the will devises specific parcels of real estate to certain devisees; by the next clause provides that the "balance of my real estate which I now own or may at any time hereafter own shall be equally divided between" certain persons; by the next clause makes specific money bequests to his half sisters, and by a later clause disposes of the residue of his personal estate "after deducting all gifts, donations, legacies, bequests and other expenses heretofore or hereafter named," the specific bequests are not a charge upon the real estate, and if the personal estate is not sufficient to pay the legacies and bequests in full they must be abated proportionately. (*Williams* v. *Williams,* 189 Ill. 500, and *Simonsen* v. *Hutchinson,* 231 id. 508, distinguished.)

5. SAME—*the testator, after making an absolute gift, cannot restrict its free use.* Where the testator has made absolute gifts

of his property, both real and personal, to various devisees and legatees, he cannot·by a later provision in the will forbid any devisee or legatee from giving any portion of the shares they have received under the will to a certain person, with the penalty that if such event shall occur then his entire estate shall go to the legal heirs of his half sisters, and such provision is void as a restriction on the free use of the absolute gifts.

WRIT OF ERROR to the Circuit Court of Clinton county; the Hon. A. M. ROSE, Judge, presiding.

H. G. WEBER, for plaintiffs in error.

MURRAY & LAGER, for defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Defendants in error, Gustav Jenne and Emma Habbegger Senn, filed their bill in chancery in the circuit court of Clinton county to construe the will of John R. Grundmann, deceased. By the first .clause of the will the testator directed the payment of all his just debts and funeral expenses, and further directed his executors to erect over his grave a good and substantial tombstone, not to exceed $200 in cost. By the second clause he devised to Anna Jenne, wife of Gustav Jenne, certain real estate in the village of Jamestown, in Clinton county, and also about 300 acres of farm lands by proper description, situated in the counties of Bond and Clinton. The rest of the will, except the signature of the testator and the attesting clause, is as follows:

"*Third*—The balance of my real estate which I now own or may at any time hereafter own shall be equally divided between Anna Jenne and Emma Habbegger, share and share alike, excepting any and all property that I may be heir to in Germany, at my death. Said property shall remain and be divided among the legal heirs in said country.

"*Fourth*—The executors of my estate shall pay in good and legal money of the United States·three thousand dollars, ($3000,) share and share alike, to each one of my three (3) half sisters, (maiden name Steuring,) of Calle, Kirschspiel, Bueken, province of Hanover, Germany, within one year after my death. If in the

event of the death of one·or all of said half/sisters, the above amount shall be evenly divided among their legal heirs as the laws of their country may direct.

"*Fifth*—The executors of my estate shall pay unto Anna Meyer, widow of Louis G. Meyer, five hundred dollars ($500) in lawful money of the United States within one year after my death: *Provided,* that said Anna Meyer presents no bill, in any shape or form, in court for nursing, board, care, attention, or, in short, anything that she, said Anna Meyer, may claim is due her from my estate. If any such bill be presented then this five hundred dollars ($500) shall not be paid to her but be equally divided between Anna Jenne and Emma Habbegger.

"*Sixth*—I bequeath and grant unto Bertha Senn, wife of Samuel Senn, the sum of five dollars ($5).

"*Seventh*—I grant unto Jacob Spittler, Henry Foehner and Adam Wehrli, former faithful employees of mine, one hundred dollars ($100) each, in cash, from my estate, said sum to be paid within one year from the date of my death.

"*Eighth*—I hereby give and grant to the congregation of St. Paul's German Evangelical Church of Jamestown, Illinois, one thousand dollars ($1000) in lawful money of the United States, said amount to be paid within one year from my death. Said money to be handled by the trustees of said church as they may be elected and installed from time to time. Said trustees to be bonded for said amount. It is further my wish that this money be not spent but put on interest and only the interest therefrom used, except in extreme cases then $100 for each year, only, can be taken from this donation and used. In case that this congregation disbands, then this money, or any part remaining thereof, shall become the property of any congregation or church that may succeed this one.

"*Ninth*—It is my wish that all personal property of every kind be disposed of in the best manner, either at public or private sale, as executors see fit.

"*Tenth*—All money on hand and that may be derived from the sale of any of my personal property or any way collected, shall be, after deducting all gifts, donations, legacies, bequests and other expenses heretofore or hereafter named, shall be equally divided between Anna Jenne and Emma Habbegger, share and share alike.

"*Eleventh*—If the herein mentioned Emma Habbegger should die without issue, her interest in this estate shall then be equally divided among Anna Jenne and Irene Mewes, daughter of now Mrs. Samuel Senn. Said interest of Irene Mewes cannot be sold or in any way disposed of until she becomes of legal age.

"*Twelfth*—I hereby positively and absolutely forbid anyone that receives any amount from my estate to present, give, donate or

share up any part of the money that they have received from this estate to Samuel Senn or his wife, Bertha Senn, either directly or indirectly, and in the event that this should occur, then my entire estate, or any part thereof that may be yet obtained, shall be given to the legal heirs of my three (3) half sisters, now residing in Germany.

"I hereby nominate and appoint Gustav Jenne and Emma Habbegger as executor and executrix of my last will and testament, and they shall furnish bond as the court may direct. And I revoke all former wills, codicils by me made.

"In witness whereof I have hereto subscribed my name and affixed my seal this second day of March, A. D. 1909."

The case was submitted to the court for trial on a statement of facts substantially as follows:

The complainants filed their bill in chancery to construe the will of John R. Grundmann, deceased. The defendants, Anna Sophia Margaretha Stuhring Kehlbeck, August Henry Herman Ehler Lichtenberg, Anna Sophia Maria Doris Eickhoff, Henry Dietrich Friederich Lichtenberg, Henry Friederich Dietrich Stuhring and Henry Fritz William Dietrich Meyer, filed their demurrer, which was overruled, and then filed their answer, to which complainants filed their replication, and Irene Mewes, an infant, by William Johnston, her guardian *ad litem,* filed her answer. The said John R. Grundmann, a bachelor, died September 3, 1912, at the age of seventy-four years, leaving a will, which was admitted to probate in the county court of Clinton county, Illinois, on December 2, 1912. The testator has no heirs living in this country. The fourth clause of his will makes provision for his three half sisters in Germany, two of whom are dead, and one of whom was dead almost ten years at the time of the making of the will. The half sister living is Anna Sophia Margaretha Stuhring Kehlbeck. The other two half sisters were Margaretha Dorothea Lichtenberg and Katharine Maria Margaretha Elizabeth Meyer. Said Margaretha Dorothea Lichtenberg left her surviving as her only heirs-at-law, August Henry Herman Ehler Lichtenberg, Anna Sophia Maria Doris Eick-

271 — 34

hoff and Henry Dietrich Friederich Lichtenberg; and the said Katharine Maria Margaretha Elizabeth Meyer left her surviving as her only heirs-at-law, Henry Fritz William Dietrich Meyer and Henry Friederich Dietrich Stuhring. The first knowledge of Grundmann is that he took up his residence at Jamestown, a village in the northeast corner of St. Rose township, Clinton county, soon after or during the civil war. The greater part of his life since that time he lived with Louis G. Meyer and family. Emma Meyer, Anna Jenne, Emma Habbegger Senn and Bertha Senn, mentioned in the will, are the widow and children, respectively, of Louis G. Meyer, while Irene Mewes is the daughter of Bertha Senn by a former marriage. The testator at times carried on a desultory correspondence with his half sisters. At the time of the making of the will Emma Habbegger (now Senn) was a widow. She never had any children. She is now about forty-five years of age and has recently married again. The testator had suffered a paralytic stroke some time before he made his will. The scrivener who drew the will was John R. Habbegger, a merchant, who died prior to the testator. The personal estate of the testator was worth about $7500. The real estate was worth about $29,000. There are no debts to speak of, and there was substantially no change in the fiscal affairs of the deceased since making the will, except shortly before his death his personal estate came into the hands of a conservator. Since making the will he bought no real estate, was careful in his business, and had no more personal estate at the time he made his will than he had when he died.

It was stipulated that the laws of the German empire provide as to personal property that the children of a deceased parent take in equal shares and that an illegitimate child inherits from his or her mother equally with the others; that in addition to the facts agreed to, the facts stated in the bill are true, meaning purely the facts therein stated and not the construction contended by complainants.

It was also stipulated that the points of law at issue between the parties are as follows, viz. :

(*a*) As to the fourth clause: (1) Does this clause mean that the three half sisters receive $3000 to be equally divided among them, share and share alike, or does it mean that each sister shall receive $3000? (2) Do the heirs of the half sisters who were dead at the time the will went into effect participate in their ancestor's portion *per capita* or *per stirpes?*

(*b*) Is the will so framed as to make the money legacies, or any of them, a charge upon the real estate devised, either specifically devised or as a real estate residuary?

(*c*) (1) What interest does Emma Habbegger Senn take under the will? (2) What interest, if any, has Irene Mewes in the share of the real estate and personal property devised to Emma Habbegger Senn, in possession or expectancy? (3) If Irene Mewes has any interest, is it destructible by Emma Habbegger Senn giving birth to a child?

(*d*) Is the twelfth clause of the will valid?

It was further stipulated and agreed on the statement of the facts submitted containing the points of law at issue between the parties, that the court shall decide thereon and shall render his decision therein according as the rights of the said parties in law and equity may appear, in the same manner as if the facts aforesaid were proved upon the trial of said issue.

All the material facts stated in the bill are included in the foregoing statement of facts. The real estate devised by the third clause of the will to Anna Jenne and Emma Habbegger is set out in the bill by proper description and consists of about 340 acres of land in the counties of Bond and Clinton.

The cause coming on to be heard upon the bill and answer, the agreed statement of facts above set out and the

points of law at issue between the parties, the court construed said will and decreed as follows:

(*a*) As to the fourth clause: (1) That each of the half sisters mentioned in said clause is to receive $1000; (2) that the heirs of the half sisters who are dead take *per stirpes*.

(*b*) Inasmuch as the holding of the court as to the fourth clause is that each of the half sisters is to receive $1000, and inasmuch as with such construction there will be no deficiency in the personal estate to pay all of the bequests, the court therefore does not decide this question.

(*c*) (1) That Emma Habbegger Senn takes a conditional fee under the will and that she takes the fee simple title upon issue being born to her; (2) that if said Emma Habbegger Senn should die without issue, one-half of the real estate and one-half of the personal property devised and bequeathed to her shall under the will go to Irene Mewes and the remaining one-half to Anna Jenne; (3) that such interest of Irene Mewes and Anna Jenne is destructible in the event that Emma Habbegger Senn should give birth to a child.

(*d*) That the twelfth clause of the will is invalid.

Defendants to the bill of complaint, who were the beneficiaries under the fourth clause of the will, have sued out a writ of error to reverse the decree of the circuit court, assigning as error that the holdings and decree of the trial court are contrary to law; that the court erred in holding that the three half sisters of the testator mentioned in the fourth clause of the will were entitled to only $1000 each instead of $3000 each; that the court erred in not rendering a decision as to whether the land devised, either specifically or residuary, is charged with the payment of any deficiency of the money bequest should there be any deficiency of personal property to pay the same; that the court erred in holding and rendering a decree that the twelfth clause is invalid.

No specific assignment of error or argument has been made by any of the parties as to the correctness of the finding of the trial court set out under paragraph (c) above as to the interest taken by Emma Habbegger Senn and the ultimate disposition of such interest upon her dying leaving issue or not leaving issue, and it will not be necessary to pass upon such finding.

The fourth clause of the will contains two sentences. In the first sentence the testator provides that "the executors of my estate shall pay in good and legal money of the United States three thousand dollars, ($3000,) share and share alike, to each one of my three (3) half sisters, (maiden name Steuring,) of Calle, Kirschspiel, Bueken, province of Hanover, Germany, within one year after my death." If the words "each one of" had been left out of this sentence where they occur after the words "share and share alike," there would be no question about the meaning of this sentence. It would show a clear intent to bequeath the sum of $3000 to the three sisters, said amount to be equally divided among them, share and share alike. If, on the other hand, the words "share and share alike" had been left out there would be a plain bequest of $3000 to each one of the testator's half sisters, or a total of $9000. Under the rules that have been adopted for construing wills, all of the language used in the entire will must be taken into consideration. No help can be derived from the other paragraphs of the will and very little from the surroundings and condition of the testator's affairs as shown by the agreed statement of facts, unless it be the fact that the testator did not have at the time the will was drawn, some four years before his death, enough money or personal property to pay all of the bequests and legacies made in the will if he intended to give $3000 to each of his sisters, or $9000 to all three. Even if it be assumed that the testator took this fact into consideration in making his will, such a circumstance is not of sufficient force to justify a

construction that would be contrary to the language of the will. It is also true, as appears from the agreed statement of facts, that the will was not drawn by a lawyer nor one experienced in such matters but was drawn by a merchant with whom the testator was acquainted. The second sentence of clause 4, to which we shall have occasion to refer later, is not a grammatical sentence, although we think its meaning is tolerably clear. The reference in this sentence to "the above amount" is merely to the total amount the said sisters were to receive, and may mean either $3000 or $9000. The will must be construed from the language used, if possible.

The question then is, in what sense are the words and terms in said clause 4 used and which words are to control?—the phrase "share and share alike" or the words "to each one?" The words "share and share alike" are never used to indicate the quantum or amount that is intended to be given. The sole meaning of such words and the sense in which they are invariably used are simply to denote an equal division among members of a class or number of beneficiaries, legatees or devisees in a will. Accordingly, in their plain meaning and accepted legal definition they can not be used to qualify the amount of the bequest to any one of the beneficiaries named in clause 4, but are to be considered merely as establishing the intent of the testator that the beneficiaries named shall share equally,—that each shall receive the same amount,—and the amount they are to receive is to be gathered from the other language of that clause. This being true, the clause plainly provides that each one of the testator's half sisters is to receive the sum of $3000, and we think this was the intent of the testator to be gathered from the plain language of that clause, and that the court was in error in holding that the said three sisters should receive $1000 each instead of $3000 each.

As to the next point, we think that the holding of the chancellor was correct. The second sentence of clause 4

amounts to a plain direction that the amount devised by the first sentence shall be evenly divided among the legal heirs of the said half sisters as the laws of their country may direct. In the agreed statement of facts it is stipulated that under the laws of Germany the heirs of said parties take *per stirpes*. Under the stipulation as evidently understood by the parties, the expression "laws of Germany" is to be taken as meaning "laws of their country," meaning the country in which the beneficiaries lived. The chancellor was correct in his holding.

It is contended by plaintiffs in error that one of the bequests is void and lapses as to the one sister for the reason that she was dead at the time the will was executed. But from the language of the entire clause we think that it was the intent of the testator to bequeath the sum of $3000 to each of his three half sisters, and in the event of any of them being dead when the will was made or dying afterwards, that the bequest of such one should go to her legal heirs according to the laws of their country. The heirs of the deceased half sisters therefore take *per stirpes*.

Under the construction which we have placed upon the fourth clause it will be necessary to also decide whether the bequests of personal property are a charge upon any of the real estate of the testator devised by the will. Counsel for plaintiffs in error cites the cases of *Williams* v. *Williams,* 189 Ill. 500, and *Simonsen* v. *Hutchinson,* 231 id. 508, in support of his contention that the real estate devised is subject to the payment of the money legacies if there is a deficiency of the personal estate. In the *Williams case* it was held that where a testator bequeaths legacies to his various sons and daughters which aggregate more than his personal property, and devises the rest, residue and remainder of his estate to his sons and daughters, share and share alike, such residue is given in one mass and the legacies are a charge upon the residuary estate, and that the intention to make bequests a charge upon real estate may be

implied from a consideration of the whole will. In the *Simonsen case* the testatrix by her will, after making various bequests of money, the aggregate of which, together with the debts, amounted to more than the personal property of the estate, devised by the residuary clause "all the rest and residue of my estate that shall remain after the satisfaction of the above legacies and payment of my just debts and funeral expenses." In each of these cases the court held that it was the intent of the testator, as shown by the language of the will, to devise the residue of his estate after the payment of the specific legacies mentioned in the will. In the will under consideration the tenth clause is a residuary clause of personal property only. By the third clause the testator devises "the balance of my real estate which I now own or may at any time hereafter own." By the tenth clause the residuum of the personal property is expressly devised "after deducting all gifts, donations, legacies, bequests and other expenses heretofore or hereafter named," and is clearly subject to the specific bequests made in the will. There is no intent, however, expressed in the will to make the real estate devised by the third clause subject to the payment of the legacies in question. The rule is as stated in *Simonsen* v. *Hutchinson, supra:* "Personal property is the primary fund out of which specific legacies in a will must be paid, and where such legacies are not made a charge upon real estate by the will and there is a deficit of personal property to pay, the specific legacies must lapse. (*Heslop* v. *Gatton,* 71 Ill. 528; *Wentworth* v. *Read,* 166 id. 139; *Engelthaler* v. *Engelthaler,* 196 id. 230; *Vestal* v. *Garrett,* 197 id. 398.) While this is a general rule, it is also well established that when the intention of the testator to charge his real estate with a payment of specific legacies is clear, either from the express words of the will or by necessary implication from the language used, legacies will be held to be a charge upon the real estate." None of the legacies or bequests of money are expressly made a charge

on any of the real estate devised. By the second clause the testator devises certain parcels of real estate, fully described, to certain devisees. By the third clause of the will the testator devises "the balance of my real estate which I now own or may at any time hereafter own." This is not, in terms, a devise of the residue, which means what is left after specific bequests and devises are paid, and by the wording of the clause there is no intention manifested by the testator to treat the balance of his real estate as a residuum, subject to the payment of anything. The residue, if real estate is included in the residue, is not given together with the residue of the personal estate in one mass, as in the *Williams case, supra.* The impression from reading the entire will is that the testator contemplated leaving both real and personal property. By the third clause he devised the balance of any real estate of which he might die seized, to certain devisees. This clause, following the second clause, in which certain specific pieces of real estate are devised, would operate to dispose of all real estate owned by the testator at the time of his death except that mentioned in the second clause, and such real estate would not be subject to the specific legacies and bequests if there were not enough personal estate to pay the same. This conclusion is supported by the tenth clause of the will, which is in terms a residuary clause of personal property, and in which the testator specifically provides that the residue of his personal estate is subject to the specific legacies mentioned, but nowhere in the will is language used from which it can reasonably be inferred that the testator had the intent to make the real estate devised subject to such legacies. It is our opinion, therefore, that the personal property of the estate, only, is subject to the bequests of money, and that if the personal estate is insufficient to pay said legacies and bequests they will be abated proportionately.

The court also properly held that the twelfth clause of the will is invalid. A testator can bequeath and devise

property by a will or not, as he sees fit. If he makes an absolute gift of such property he cannot by another clause in his will restrict the free use or right to dispose of such gift. *Jones* v. *Port Huron Engine and Thresher Co.* 171 Ill. 502; *Bowen* v. *John,* 201 id. 292.

For the reasons given, the decree of the circuit court will be reversed and the cause remanded to that court, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*